**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EDNA AUSTIN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07-cv-883-MEF** |
| | ) | |
| **J.M.W., L.L.C., d/b/a TIN TIN** | ) | |
| **SUPER BUFFET, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

Defendants the City of Ozark, Alabama, Chief Tony Spivey, and Officer Walton Russell submit this memorandum in support of their motion to dismiss.

## I. <u>STATEMENT OF THE CASE</u>

The plaintiffs filed this action under the Americans with Disabilities Act, 42 U.S.C. § 1983, and state law.  They complain of discriminatory treatment by the Tin Tin Super Buffett Chinese restaurant on March 2, 2007.  They sued the restaurant itself, one of the restaurant's employees, and one of its customers.

The plaintiffs have also sued the City of Ozark, Police Officer Walton Russell, and Police Chief Tony Spivey ("the municipal defendants").

For the reasons explained below, the latest complaint does not state a claim against the municipal defendants upon which relief can be granted. Officer Russell is entitled to qualified immunity against the plaintiffs' federal claims and State-agent immunity against the plaintiffs' state law claim.  Chief

1

Spivey is entitled to State-agent immunity against the plaintiffs' state law claim.

## II. <u>FACTUAL ALLEGATIONS</u>

The complaint alleges Edna Austin is blind and requires the assistance of a service animal. (<u>See</u> Doc. 29 at 3, ¶ 8.)

On March 2, 2007, Mrs. Austin and her husband, Redding, visited the Tin Tin Super Buffet for dinner. (<u>See</u> Doc. 29 at 2, ¶ 2.) The Austins entered the restaurant accompanied by Mrs. Austin's service animal. (<u>See</u> Doc. 29 at 3, ¶¶ 8-9.)

The Austins claim a Tin Tin employee initially told them to leave because animals were not allowed inside the restaurant. (<u>See</u> Doc. 29 at 3, ¶ 9.) After some discussion, the Austins claim the employee seated them in isolation, in a separate room on the far side of the restaurant. (<u>See</u> Doc. 29 at 3, ¶ 9.)

The Austins claim they asserted their right to eat with the other patrons. (<u>See</u> Doc. 29 at 3, ¶ 9.) They claim a manager came to their table, but refused to seat them near other customers. (<u>See</u> Doc. 29 at 3, ¶ 9.) They allege the manager became loud and verbally abusive during the conversation. (<u>See</u> Doc. 29 at 3, ¶ 9.)

According to the Austins, they called the Ozark Police Department, and an officer responded. (<u>See</u> Doc. 29 at 4, ¶ 11.) After the Austins explained their situation to the officer, they claim the officer told them to go home. (<u>See</u> Doc. 29 at 4, ¶ 11.)

The Austins brought this action against the restaurant, one of its employees, the man they believed was the restaurant's manager, the City of Ozark, Officer Walton Russell, and Chief Tony Spivey.

The Austins allege violations of their rights under the Americans with Disabilities Act (the "ADA") and the Fourteenth Amendment's Equal Protection Clause, as well as the state law tort of outrage.

In response to the plaintiffs' federal claims, Officer Russell asserts the defense of qualified immunity. In response to the state law claim, the City of Ozark, Officer Russell and Chief Spivey assert the defense of State-agent immunity.

Moreover, the complaint does not state a claim against the City of Ozark, Officer Russell, or Chief Spivey upon which relief can be granted.

### III. ANALYSIS

**A. Legal Standards**

#### 1. Motion to Dismiss Standard

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations of the complaint are true (even if doubtful in fact)." Id. at 1965.

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## 2. Qualified Immunity Standard

"Government officials sued for acts committed in the course of their official duties may invoke the defense of qualified immunity." O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004).

"Qualified immunity is a question of law that may be asserted in three ways: (1) on a pretrial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c); or (3) on a summary judgment motion pursuant to Federal Rule of Civil Procedure 56(e)." Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004).

"In reviewing a motion to dismiss based on qualified immunity, the district court is required to accept the factual allegations in the plaintiff's

complaint as true and draw all reasonable inferences in favor of the plaintiff." Wilson v. Strong, 156 F.3d 1131, 1133 (11th Cir. 1998).

 "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

### 3. State-agent Immunity

Police officers and the municipalities that employ them may invoke the defense of State-agent immunity against state law claims.  See Ala. Code § 6-5-338 (1975).

A police officer is entitled to State-agent immunity if the conduct made the basis of the plaintiff's claim occurred during the performance of the officer's law enforcement duties.  See Hollis v. Brighton, 950 So. 2d 300, 309 (Ala. 2006).

"[I]mmunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  Giambrone v. Douglas, 874 So. 2d 1046, 1057 (Ala. 2003).

"It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune."  Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003).

**B.  Officer Walton Russell**

The complaint purportedly asserts five claims against Officer Russell. First, it alleges Officer Russell violated Title II of the Americans with Disabilities Act, which prohibits discrimination by public entities.  (See Doc. 29 at 9, ¶ 13.)

Second, the complaint alleges Officer Russell violated Title III of the ADA, which prohibits discrimination by public accommodations.  (See Doc. 29 at 9, ¶ 13.)

Third, the complaint alleges Officer Russell violated Title IV of the ADA, which is known as the "anti-retaliation" provision.  (See Doc. 29 at 9, ¶ 13.)

Fourth, the complaint alleges Officer Russell violated the plaintiffs' rights under the Fourteenth Amendment's Equal Protection Clause.  (See Doc. 29 at 9, ¶ 13.)

Finally, the complaint alleges a state law claim for outrage.  (See Doc. 29 at 10, ¶ 15.)

As explained below, none of these allegations states a claim against Officer Russell upon which relief can be granted.  Additionally, Officer Russell is entitled to qualified immunity against the plaintiff's federal claims and State-agent immunity against the plaintiffs' state law claim.

**1.  Title II of the ADA (Public Services)**

The complaint alleges Officer Russell violated Title II of the ADA.  (See Doc. 29 at 9, ¶ 13.)

Title II prohibits discrimination by public entities: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by

6

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by a public entity."  42 U.S.C. § 12132 (Westlaw 2008).

Title II defines a "public entity" as, "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1) (Westlaw 2008).

"[T]here is no individual capacity liability under Title II of the ADA." Badillo v. Thorpe, 158 Fed. Appx. 208, 211 (11th Cir. 2005).  "[T]he ADA allows recovery only against the entity engaged in the violation, and not against individual employees or agents of the entity."  Stoddard v. Florida Bd. of Bar Examiners, 509 F. Supp.2d 1117, 1124 (N.D. Fla. 2006).

The Second, Seventh, Eighth and Ninth Circuits share this view.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding, "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA"); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2nd Cir. 2001) (holding, "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials"; Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (holding, "there is no personal liability under Title II"), abrogated on other grounds, as recognized in Bruggeman ex rel.

Bruggeman v. Blagojevich, 324 F.3d 906, 912-13 (7th Cir. 2003); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (holding the term "public entity," "as it is defined within the statute, does not include individuals").

Because there is no individual liability under Title II of the ADA, the claim against Officer Russell should be dismissed.

Additionally, Officer Russell is entitled to qualified immunity against the plaintiff's Title II claim, because it does not state a claim for violation of clearly established law by Officer Russell.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

### 2.  Title III of the ADA (Public Accommodations)

The complaint also alleges Officer Russell violated Title III of the ADA. (See Doc. 29 at 9, ¶ 13.)   Title III prohibits discrimination by public accommodations: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation.*"   42 U.S.C. § 12182(a) (Westlaw 2008) (emphasis added).

The complaint does not allege that Officer Russell owns, leases or operates a place of public accommodation.

Title III defines a "public accommodation" as follows:

(7) Public accommodation

The following *private entities* are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce –

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

> (B) a restaurant, bar, or other establishment serving food or drink;

> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

> (D) an auditorium, convention center, lecture hall, or other place of public gathering;

> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

> (G) a terminal, depot, or other station used for specified public transportation;

> (H) a museum, library, gallery, or other place of public display or collection;

> (I) a park, zoo, amusement park, or other place of recreation;

> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7) (Westlaw 2008) (emphasis added).

By definition, only a "private entity" can qualify as a "public accommodation." See 42 U.S.C. § 12181(7) (Westlaw 2008) ("The following **private entities** are considered public accommodations for purposes of this subchapter...). Title III defines that term: "The term private entity means any entity other than a public entity (as defined in section 12131(1) of this title)." 42 U.S.C. § 12181(6) (Westlaw 2008).

The United States Court of Appeals for the Eighth Circuit considered an identical fact pattern in Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034 (8th Cir. 1998). The Eighth Circuit held the plaintiff failed to state a Title III ADA claim against police officers who ordered the plaintiff to leave a restaurant after the restaurant refused to serve her with her service animal present. Id. at 1036.

The complaint is devoid of any allegations against Officer Russell that would subject him to liability under Title III of the ADA. Simply put, there is no allegation that Officer Russell owns, leases or operates a place of public accommodation. Therefore, the Title III claim against Officer Russell should be dismissed.

Officer Russell is also entitled to qualified immunity against the plaintiff's Title II claim, because it does not state a claim for a violation of clearly established law by Officer Russell. See Mitchell v. Forsyth, 472 U.S. 511, 526

(1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

### 3. Title IV of the ADA (Anti-retaliation)

The complaint alleges Officer Russell violated Title IV of the ADA, which is known as the anti-retaliation provision:

(a) Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures

> The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C. § 12203 (Westlaw 2003).

The plaintiffs' theory is that Officer Russell retaliated against them by ordering them to go home after they asserted Mrs. Austin's right against

discrimination in a place of public accommodation.  (See Doc. 29 at 9, ¶ 13 ("Instead of performing his duty and advising the restaurant to let the Austins eat with the other patrons, he told them to go home.").)

In other words, the Austins claim they complained about a violation of Title III by the Tin Tin Super Buffet and, in response to their complaint, Officer Russell retaliated against them in violation of Title IV.

The question of whether a Title IV allows a claim for individual liability when the underlying conduct opposed was an alleged violation of Title III is unsettled.  In their complaint, the plaintiffs refer to Shotz v. City of Plantation, 344 F.3d 1161 (11th Cir. 2003), as clearly establishing individual liability under Title IV.  (See Doc. 29 at 8.)  However, Shotz does not address the issue presented here.

In Shotz, the Eleventh Circuit addressed the question of whether individual liability may arise for retaliation against a person that opposes discrimination by a public entity under Title II of the ADA.  See Shotz, 344 F.3d at 1166 ("The question here is whether private individuals may sue under § 12203 to redress retaliation by other individuals, where the conduct opposed is made unlawful by Subchapter II of the ADA concerning public services.")

The Eleventh Circuit held individual liability could arise for retaliatory behavior against a person that opposed unlawful conduct in the Title II (public entity) arena.

It is by no means clear that the Shotz holding extends to allegations of retaliation against those who oppose other violations of the ADA.  To the

12

contrary, in <u>Albra v. Advan, Inc.</u> the Eleventh Circuit held there is no individual liability for retaliation against one who opposes conduct made unlawful by Title I of the ADA, which prohibits discrimination in employment.  490 F.3d 826, 834 (11th Cir. 2007) ("we conclude that individual liability is precluded under § 12203 where the act or practice opposed by the plaintiff is made unlawful by Subchapter I of the ADA").

In short, the complaint presents an issue of first impression: whether individual liability can arise under § 12203 when the underlying conduct opposed was an alleged violation of Title III's prohibition against discrimination in places of public accommodation.

### a.  Invocation of Qualified Immunity Defense

Officer Russell invokes the qualified immunity defense.  He is entitled to qualified immunity, because the complaint does not allege the violation of clearly established law.

The Eleventh Circuit commented on the application of the qualified immunity defense to the ADA in <u>Shotz v. City of Plantation</u>: "We note public officials sued in their individual capacities may be able to assert the defense of qualified immunity under the ADA, even though we have not expressly decided the issue."  344 F.3d 1161, 1180 n.28 (11th Cir. 2003).

The United States Courts of Appeals for the Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits have held the qualified defense is available to public officials sued in their individual capacities under the ADA.  <u>See</u> <u>Doe v. County of Centre</u>, 242 F.3d 437, 454-55 (3rd Cir. 2001); <u>Bartell v. Lohiser</u>, 215 F.3d

550, 555 n.1 (6th Cir. 2000); <u>Hall v. Thomas</u>, 190 F.3d 693, 696-97 (5th Cir. 1999); <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668, 676 (9th Cir. 1998); <u>Gorman v. Bartch</u>, 152 F.3d 907, 914-16 (8th Cir. 1998); <u>Allison v. Department of Corrections</u>, 94 F.3d 494, 497 n.1 (8th Cir. 1996); <u>Torcasio v. Murray</u>, 57 F.3d 1340, 1343 (4th Cir. 1995).

The United States Court of Appeals for the Eleventh Circuit has recognized the doctrine of qualified immunity as a defense against other federal statutory claims.  <u>See</u> <u>Tapley v. Collins</u>, 211 F.3d 1210, 1214 (11th Cir. 2000) (holding qualified immunity defense available to public official sued in individual capacity under Federal Wiretap Act); <u>Gonzalez v. Lee County Hous. Auth.</u>, 161 F.3d 1290, 1300 n.34 (11th Cir. 1998) (holding qualified immunity defense available to public official sued in individual capacity under anti-retaliation provision of Fair Housing Act, 42 U.S.C. § 3617); <u>Lussier v. Dugger</u>, 904 F.2d 661, 670 n.10 (11th Cir. 1990) (holding qualified immunity defense available to public official sued in individual capacity under federal Rehabilitation Act of 1973).

In <u>Harlow v. Fitzgerald</u>, the Supreme Court staked out the breadth of the qualified immunity defense: "We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established *statutory or constitutional rights* of which a reasonable person would have known."  457 U.S. 800, 818 (1982) (emphasis added).    The Supreme Court's specific

14

reference to statutory rights leaves no doubt as to the scope of the qualified immunity defense.

According to the Eleventh Circuit, "the qualified immunity defense is so well-rooted in our jurisprudence that only a specific and unequivocal statement of Congress can abolish the defense." Tapley v. Collins, 211 F.3d 1210, 1216 (11th Cir. 2000).

In light of the foregoing, the qualified immunity defense is available to Officer Russell for the plaintiff's anti-retaliation claim. Therefore, Officer Russell expressly invokes the qualified immunity defense.

### b. Application of Qualified Immunity Defense

"Government officials sued for acts committed in the course of their official duties may invoke the defense of qualified immunity." O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004).

"Qualified immunity is a question of law that may be asserted in three ways: (1) on a pretrial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c); or (3) on a summary judgment motion pursuant to Federal Rule of Civil Procedure 56(e)." Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

### i. Discretionary Function

"To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time the alleged violation of

federal law occurred." <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004).

In this case, the complaint alleges Officer Russell "is a police officer with the City of Ozark and acted in this action in his official capacity as a police officer under color of state law." (Doc. 29 at 2, ¶ 4.)

Therefore, the complaint establishes Officer Russell's eligibility to invoke the qualified immunity defense.

### ii. Burden Shift

"Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002).

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." <u>O'Rourke v. Hayes</u>, 378 F.3d 1201, 1206 (11th Cir. 2004).

### iii. Two-step Test

"To determine whether an officer is entitled to qualified immunity, we engage in a two-step analysis." <u>Garrett v. Athens-Clarke County</u>, 378 F.3d 1274, 1278 (11th Cir. 2004).

The first step is to ask whether the complaint alleges the violation of a statutory or constitutional right. If so, the court must determine whether that right was clearly established at the time of the alleged violation. <u>See</u> <u>Harlow v.</u>

Fitzgerald, 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

"In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Lee v. Ferraro, 284 F.3d 1188, 1197 n.5 (11th Cir. 2002). "The case law of one other circuit cannot settle the law in this circuit to the point of it being 'clearly established.'" Hansen v. Soldenwagner, 19 F.3d 573, 578 n.6 (11th Cir. 1994).

### iv. No Violation of Statutory Right

The ADA does not require, or even authorize, police officers to take enforcement action. Violations of the ADA are civil matters that must be addressed through an action for money damages by either the aggrieved person or the Attorney General of the United States. See 42 U.S.C. § 12188 (Westlaw 2008) (establishing enforcement mechanism).

### v. Law Not Clearly Established

As of March 2, 2007, the question of whether the anti-retaliation provisions of 42 U.S.C. § 12203 extended to situations in which a person opposes discrimination in a place of public accommodation was not clearly established.

One Eleventh Circuit opinion held § 12203 applied in the public entity context. See Shotz v. City of Plantation, 344 F.3d 1161, 1179-80 (11th Cir.

2003) ("we hold that an individual may be sued privately in his or her personal capacity for violating § 12203 in the public services context").

A more recent Eleventh Circuit opinion held § 12203 did not apply in the employment context.  See Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007) ("we conclude that individual liability is precluded under § 12203 where the act or practice opposed by the plaintiff is made unlawful by Subchapter I of the ADA").

Even if the Eleventh Circuit had recognized a retaliation claim in the public accommodations context on March 2, 2007, it was by no means clearly established that Officer Russell's alleged conduct was unlawful.

According to the complaint, the plaintiffs had been seated in the restaurant by the time Officer Russell arrived.  (See Doc. 29 at 3, ¶ 9.)  The plaintiffs believed they were seated in a discriminatory manner and treated rudely, so they called the police.  (See Doc. 29 at 3-4, ¶¶ 9-11.)

The Americans with Disabilities Act does not require, or even authorize, municipal police officers to enforce compliance with its provisions.

The plaintiffs have dragged Officer Russell into this lawsuit by complaining that he told them to go home after he listened to their complaint. (See Doc. 29 at 4, ¶ 11.)  However, the plaintiffs admit the restaurant manager was "loud," "rude" and said "he wasn't going to allow her [to] sit with other patrons."  (Doc. 29 at 4, ¶ 9.)

There was nothing plainly unlawful about Officer Russell separating the parties for the night and allowing the plaintiffs to seek redress in a civil lawsuit

later.  In fact, that is exactly what the ADA contemplates.  <u>See</u> 42 U.S.C. §
12188 (Westlaw 2008) (establishing enforcement mechanism).  Let us not lose
sight of the restaurant staff's own Fourth Amendment rights.

The United States Court of Appeals for the Eleventh Circuit has not
hesitated to strip officers of their qualified immunity for taking enforcement
action in civil matters.  <u>See</u> <u>McCray v. City of Dothan</u>, No. 01-15756-DD, 2003
WL 23518420, at *4 (11th Cir. 2003) (denying qualified immunity and criticizing
officers for injecting themselves into resolution of civil disputes); <u>Sheth v.</u>
<u>Webster</u>, 145 F.3d 1231, 1238 (11th Cir. 1998) (denying qualified immunity
when officer took enforcement action during dispute over hotel refund);
<u>Thornton v. City of Macon</u>, 132 F.3d 1395, 1399 (11th Cir. 1998) (denying
qualified immunity when officer took enforcement action during dispute over
return of mattress).

The Court should carefully weigh the implications of the plaintiffs'
liability theory against Officer Russell.  The Untied States courts already
impose an incredibly high burden upon our police officers, many of whom have
only high school diplomas and twelve weeks of police academy training.  The
courts charge these officers with instantaneous knowledge of clearly
established law.  If the law is clearly established, the officer must make the
right choice in the field, or subject himself to a judgment for monetary
damages.  Even society's most educated and skilled lawyers are not held to
such demanding standards.

19

The plaintiffs would heap additional responsibilities upon the shoulders of our officers. They would require the officers not only to refrain from violating clearly established law, but also charge them with enforcing all laws – civil and criminal, state and federal – regardless of whether the law authorizes criminal enforcement. That is not a viable outcome.

Regardless of how the Court decides this issue, the law was not clearly established on March 2, 2007, that Officer Russell's decision to separate the parties was unlawful. Officer Russell is entitled to qualified immunity.

### vi. Monetary Damages and Attorneys Fees Are Not Available

The complaint seeks money damages and attorneys fees. (See Doc. 29 at 9-10.) Those are not recoverable in a § 12203 claim when the underlying conduct opposed was an alleged violation of Title III.

Section 12203(c) explains that the appropriate remedy for a violation of its provisions depends on the underlying conduct that the aggrieved person opposed:

> The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

In this case, the plaintiffs allegedly opposed discrimination by the Tin Tin Super Buffet, which is a public accommodation. (See Doc. 29 at 3, ¶ 9 ("They insisted that they had a right to eat with the other patrons.").) Therefore, the remedy for a violation of the anti-retaliation statute is governed by § 12188, which establishes the remedies for public accommodation discrimination.

Section 12188(a)(1) states, "The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides... ."  Therefore, a plaintiff aggrieved by a violation of § 12203 may only obtain the remedies available under § 2000a-3(a), which is also known as Title II of the Civil Rights Act of 1964.

Section 2000a-3(a) states:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance.  Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

42 U.S.C. § 2000a-3(a).

Section 2000a-3(a) does not authorize an award for money damages.  See Jairath v. Dyer, 154 F.3d 1280, 1283 n.7 (11th Cir. 1998) ("All parties in this care agree that, had Jairath brought a claim under Title III of the ADA, he could only have pursued a claim for injunctive relief, because monetary damages are only available if the civil action is initiated by the Attorney General."); see also Goodwin v. C.N.J., Inc., 436 F.3d 44, 52 (1st Cir. 2006) ("This court has recognized that section 12188(a)(1) does not contemplate an award of money damages in suits brought by private parties.").

21

Section 2000a-3(a) also does not authorize an award of attorneys fees or litigation expenses.  See Goodwin v. C.N.J., Inc., 436 F.3d 44, 52 (1st Cir. 2006) (rejecting plaintiff's argument for attorneys fees and holding, "Only the remedies in section 2000a-3(a) are applicable to Title III claims.").

Because money damages, attorneys fees, and litigation expenses are not recoverable, the plaintiffs' claims for them should be dismissed.

### 4.  Fourteenth Amendment Equal Protection

The complaint also alleges Officer Russell violated the Fourtheenth Amendment's Equal Protection Clause because "it is a fundamental right to be allowed access to places of public accommodation."  (Doc. 29 at 9, ¶ 13.)

The complaint does not adequately allege an Equal Protection violation, and Officer Russell invokes the qualified immunity defense against the plaintiffs' Equal Protection claim.

### a.  Failure to State a Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

In order to state an Equal Protection claim based on a class of one, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The plaintiffs have not made any allegations of dissimilar treatment by Officer Russell. The complaint does not allege that Officer Russell has responded to other service calls in which citizens made allegations of discrimination or mistreatment and treated the callers differently. Without such allegations, the plaintiffs cannot make an Equal Protection claim.

### b.  The Qualified Immunity Defense

Officer Russell invokes the defense of qualified immunity in response to the plaintiffs' Equal Protection claim. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

"More than mere conclusory notice pleading is required." Fullman v. Graddick, 739 F.2d 553, 556 (11th Cir. 1984). "The complaint must allege the relevant facts with some specificity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003).

"Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

The complaint does not allege a violation of clearly established law in the Equal Protection context. As such, Officer Russell is entitled to qualified immunity against the plaintiffs' Equal Protection claim.

**5. Outrage Claim Under State Law**

The plaintiffs have also sued Officer Russell under a state law theory of outrage.  (See Doc. 29 at 10, ¶ 15.)

This Court previously held that this fact pattern does not state a claim for outrage under Alabama law.  See Hardesty v. CPRM Corp., 391 F. Supp.2d 1067 (M.D. Ala. 2005) (Fuller, C.J.) (holding discriminatory exclusion of customer with service animal does not fall within three categories of cases for which Alabama courts recognize tort of outrage).

Additionally, Officer Russell invokes the defense of State-agent immunity under Code of Alabama section 6-5-338 (1975).  "The statute shields every defendant who (1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment and discretion."  Howard v. City of Atmore, 887 So.2d 201, 204 (Ala. 2003).

A police officer is entitled to State-agent immunity if the conduct made the basis of the plaintiff's claim occurred during the performance of the officer's law enforcement duties.  See Hollis v. Brighton, 950 So. 2d 300, 309 (Ala. 2006).

"[I]mmunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  Giambrone v. Douglas, 874 So. 2d 1046, 1057 (Ala. 2003).

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

The complaint does not make any factual allegations that overcome Officer Russell's claim of State-agent immunity.

Officer Russell moves to dismiss the plaintiffs' outrage claim for failure to state a claim under Rule 12(b)(6) and also under the doctrine of State-agent immunity as established by Code of Alabama section 6-5-338.

## C. Chief Tony Spivey

The complaint purportedly asserts one claim against Chief Tony Spivey. It alleges a state law claim against him under the theory of outrage. (See Doc. 29 at 10, ¶ 15.)

As previously discussed, the plaintiffs' factual allegations do not state a claim for outrage. See Hardesty v. CPRM Corp., 391 F. Supp.2d 1067 (M.D. Ala. 2005) (Fuller, C.J.) (holding discriminatory exclusion of customer with service animal does not fall within three categories of cases for which Alabama courts recognize tort of outrage).

Further, Chief Spivey invokes the defense of State-agent immunity under Code of Alabama section 6-5-338 (1975). "The statute shields every defendant who (1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment and discretion." Howard v. City of Atmore, 887 So.2d 201, 204 (Ala. 2003).

A police officer is entitled to State-agent immunity if the conduct made the basis of the plaintiff's claim occurred during the performance of the officer's law enforcement duties. See Hollis v. Brighton, 950 So. 2d 300, 309 (Ala. 2006).

25

"[I]mmunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." Giambrone v. Douglas, 874 So. 2d 1046, 1057 (Ala. 2003).

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The complaint does not make any factual allegations that overcome Chief Spivey's claim of State-agent immunity.

Chief Spivey moves to dismiss the plaintiffs' outrage claim for failure to state a claim under Rule 12(b)(6) and also under the doctrine of State-agent immunity as established by Code of Alabama section 6-5-338.

## D.  The City of Ozark, Alabama

The complaint purportedly asserts four claims against the City of Ozark. First, the complaint alleges the City violated Title II of the ADA, which prohibits discrimination by public entities.  (See Doc. 29 at 7, ¶ 12.)

Second, the complaint alleges the City violated the anti-retaliation provision of Title IV of the ADA.  (See Doc. 29 at 7, ¶ 12.)

Third, the complaint alleges the City violated 42 U.S.C. § 1983 by failing to train its officers on the ADA and adopt an ADA policy.  (See Doc. 29 at 8, ¶ 12.)

Finally, the complaint asserts a state law claim against the City under the theory of outrage.  (See Doc. 29 at 10, ¶ 15.)

None of these allegations states a claim against the City upon which relief can be granted. The City is also entitled to State-agent immunity against the plaintiffs' outrage claim.

### 1. Title II of the ADA (Public Services)

The complaint alleges the City violated Title II of the ADA. (See Doc. 29 at 9, ¶ 13.) Title II prohibits discrimination by public entities: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by a public entity." 42 U.S.C. § 12132 (Westlaw 2008).

The complaint does not factually allege discriminatory treatment or a denial of public services by any representative of the City of Ozark. To the contrary, the complaint states the City's police officer responded to the plaintiffs' call and listened to their concerns. (See Doc. 29 at 4, ¶ 11.) The ADA did not authorize the officer to take enforcement action for a violation of its provisions. See 42 U.S.C. § 12188 (Westlaw 2008) (establishing enforcement mechanism).

The complaint does not allege a violation of Title II.

### 2. Title IV of the ADA (Anti-retaliation)

The complaint alleges the City violated Title IV of the ADA, which is known as the anti-retaliation provision. (See Doc. 29 at 7, ¶ 12.) It states:

(a) Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures

> The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C. § 12203 (Westlaw 2003).

The complaint does not allege facts that demonstrate retaliation by any representative of the City of Ozark. The complaint demonstrates that the City's police officer responded to the plaintiffs' call for assistance and listened to their concerns. (See Doc. 29 at 4, ¶ 11.) The ADA did not authorize the officer to take enforcement action. See 42 U.S.C. § 12188 (Westlaw 2008) (establishing enforcement mechanism). The officer's decision to separate the disputing parties was a reasonable response to the situation he confronted. The ADA did not authorize him to enforce compliance in his law enforcement capacity.

### 3. Failure to Train or Adopt Policy

The complaint asserts a § 1983 claim against the City for failure to train its officers on the ADA and for failure to adopt a policy to govern the situation Officer Russell confronted. (See Doc. 29 at 8, ¶ 12.)

A plaintiff may not bring a § 1983 claim to vindicate rights found only in the Americans with Disabilities Act:

> [B]oth the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks that address every aspect of Holbrook's claims under section 1983. To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple. We conclude that a plaintiff may not maintain a section 1983 action in lieu of – or in addition to – a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA.

Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997).

In any event, "*Respondeat superior* or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

The plaintiffs have not identified an underlying constitutional or statutory violation upon which to base their municipal liability claim. See City

of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding municipal liability cannot attach absent underlying constitutional violation).

Further, "There are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

"To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). "This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998).

In this case, the complaint does not allege any facts that show the City of Ozark had notice of the need to provide training or adopt a policy to govern situations in which a citizen called the police to report discrimination by another citizen or business. The complaint does not allege any basis upon which to impose municipal liability upon the City.

### 4.  Outrage Claim Under State Law

As previously discussed, the plaintiffs' factual allegations do not state a claim for outrage.  See Hardesty v. CPRM Corp., 391 F. Supp.2d 1067 (M.D. Ala. 2005) (Fuller, C.J.) (holding discriminatory exclusion of customer with service animal does not fall within three categories of cases for which Alabama courts recognize tort of outrage).

Additionally, the City is entitled to State-agent immunity against the outrage claim because Officer Russell and Chief Spivey have State-agent immunity against that claim.  See Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

## IV.  CONCLUSION

For the foregoing reasons, the City of Ozark, Officer Walton Russell, and Chief Tony Spivey move to dismiss all claims against them for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6). Additionally, Officer Russell is entitled to qualified immunity against the plaintiffs' federal claims.  Officer Russell, Chief Spivey, and the City of Ozark are entitled to State-agent immunity against the plaintiffs' state law claim.

**s/ James H. Pike**
James H. Pike  (PIK003)
Attorney for Defendants
City of Ozark, Alabama, Chief Tony Spivey
and Officer Walton Russell

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail: jpike@scplaw.us

## CERTIFICATE OF SERVICE

I, James H. Pike, certify that on June 19, 2008, I electronically served

this document upon:

    Jeffrey W. Bennitt
    JEFFREY W. BENNITT & ASSOCIATES, L.L.C.
    121 Edenton Street
    Birmingham, Alabama 35242-5260

    Algert S. Agricola, Jr.
    RYALS, PLUMMER, DONALDSON, AGRICOLA
    & SMITH, P.C.
    60 Commerce Street, Suite 1400
    Montgomery, Alabama 36104-3562

    Blaine C. Stevens
    STRICKLAND & KENDALL, L.L.C.
    P.O. Box 99
    Montgomery, Alabama 36101-0099

          **s/ James H. Pike**
          James H. Pike